THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BANK OF AMERICA, N.A., <br><br> Plaintiff, <br><br> v. <br> JOSEPH SELLARS and KRISTI SELLARS, husband and wife, <br><br> Defendants. | CASE NO. C12-1655-JCC <br><br> ORDER |

This matter comes before the Court on Plaintiff Bank of America, N.A.'s unopposed motion for summary judgment (Dkt. No. 39) and the parties' joint motion for a continuance (Dkt. No. 43). Having thoroughly considered the parties' briefing, the relevant record, and the applicable law, the Court finds oral argument unnecessary and hereby GRANTS Plaintiff's motion for summary judgment for the reasons explained herein. In light of this ruling, the joint motion for a continuance is DENIED as moot.

**I.   BACKGROUND**

Plaintiff Bank of America, N.A. ("BANA") brings this declaratory judgment action against Defendants Joseph and Kristi Sellars. Plaintiff alleges that the Sellars wrongfully recorded documents in the Snohomish County property records that purported to release BANA's deed of trust ("DOT") lien against the Sellars' home. (Dkt. No. 24 at 2–3.) BANA now seeks a judgment declaring that the Deed of Release and Full Reconveyance ("Deed of Release")

is void, and that the original DOT remains a valid lien against the Property. (Dkt. No. 39 at 7.) Defendants have also filed counterclaims against BANA for its alleged failure to honor two loan modification agreements. (Dkt. No. 10 at 4.) Defendants claim unspecified damages stemming from Plaintiff's alleged breaches of contract and violations of the Washington Consumer Protection Act ("CPA"), and seek an order compelling specific performance of the parties' loan modification agreements. (*Id.* at 6–9.)

### A. Plaintiff's Declaratory Judgment Claim.

On October 12, 2006, Countrywide Bank, N.A.[1] originated a refinance loan in the amount of $340,000.00 to Joseph and Kristi Sellars for property located at 10929 36th Street NE, Lake Stevens, WA 98258-8150 (the "Property"). (Dkt. No. 10, Ex. A.) Shortly thereafter, a Deed of Trust ("DOT") securing the Loan was recorded under Snohomish County Auditor's No. 200610170345. (Dkt. No. 40, Ex. A.) Nearly four years later, non-party James McClung—without permission from BANA or the Defendants—recorded a "Deed of Release and Full Reconveyance" ("Deed of Release") under Snohomish County Auditor's No. 20109130550, which purported to appoint Ms. Alethia Outreach as successor trustee of the DOT and reconvey the DOT so as to extinguish its operation as a lien against the property. (*Id.,* Ex. B.) The Deed of Release is signed by Mr. McClung as "Authorized Agent Trustee for Alethia Outreach of said Deed of Trust herein[,]" and states that the Sellars had, as of September 13, 2010, fully satisfied their debt to Bank of America. (*Id.*) In their Answer, Mr. and Mrs. Sellars deny that they authorized Mr. McClung to act under their power of attorney or that Mr. McClung's actions gave them a fee simple absolute interest in the property. (Dkt. No. 10 at 2–3.)

//

//

---

[1] Countrywide Bank, N.A. is BANA's predecessor by merger. (Dkt. No. 17 at 2.)

### B.    Defendants' Counterclaims that BANA Failed to Honor the Loan Modification Agreements.

On November 23, 2009, Defendants entered into a loan modification agreement with BAC Home Loans Servicing LP ("BAC"), under which they agreed to pay $1,942.92 per month starting January 1, 2010.[2] (Dkt. No. 10, Ex. A.) On December 11, 2009, Defendants sent BANA a $1,942.92 cashier's check, which BANA cashed. (Dkt. No. 10, Ex. B.) Defendants allege in their counterclaim that BANA did not acknowledge this loan modification agreement, lost the corresponding paperwork, and claimed it had never received Defendants' check. (Dkt. No. 10 at 5.)

Accordingly, on January 28th, 2010, Defendants entered into a new loan modification agreement with BANA, under which they agreed to pay $1,943.49 per month starting March 1, 2010. (Dkt. No. 10, Ex. C.) On February 19, 2010, Defendants sent BANA a $1,943.49 cashier's check, which BANA cashed. (Dkt. No. 10, Ex. D.) Again, Defendants allege that BANA did not acknowledge the new loan modification agreement, lost the paperwork, and claimed it had never received Defendants' check. (Dkt. No. 10 at 5.) After these two checks, Defendants never made another payment toward their loan. (Dkt. No. 40, Ex. H at 15–16.) Mr. Sellars testified in his deposition that he stopped making payments because they were not being applied, but admitted he never received an account ledger, statement, or any other document from BANA that supports this claim. (*Id.*)

On September 30, 2013, BANA offered Defendants a trial loan modification plan, and contacted Defendants' attorneys on October 23, 2013, and October 31, 2013, inquiring as to whether the Sellars would be making the first trial plan payment. (Dkt. No. 40, Ex. A, E.) Defendants did not respond to BANA's offer. (Dkt. No. 40, Ex. G at 10.)

//

//

---

[2] BAC Home Loans Servicing LP is also BANA's predecessor by merger. (Dkt. No. 10 at 4.)

ORDER
PAGE - 3

### C. Procedural Posture

BANA filed suit on September 25, 2012, seeking to quiet title in the Property subject to the DOT. (Dkt. No. 1.) This Court denied BANA's first motion for summary judgment on the ground that BANA improperly pled a cause of action, and BANA later amended its complaint. (Dkt. Nos. 20, 24.) Defendants counterclaimed in their Answer filed October 19, 2012, seeking specific performance of the loan modification agreements and damages for Plaintiff's alleged breach of contract and violations of the CPA. (Dkt. No 10 at 6–8.)

Plaintiff now moves for summary judgment, requesting that this Court enter a declaratory judgment that the Deed of Release recorded by Alethia Outreach is void and that the original deed of trust remains a valid lien against the Property. (Dkt. No 39 at 5.) Plaintiff also requests that Defendants' counterclaims be dismissed with prejudice, because Defendants have incurred no actual damages.[3] (*Id.*) Defendants have not responded to Plaintiff's motion for summary judgment. For the reasons that follow, the Court grants Plaintiff's motion.

## II. DISCUSSION

### A. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the case's outcome, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

---

[3] The Sellars request a dismissal without prejudice in order to preserve their claims for consideration in state court. (Dkt. No. 42 at 2.) Although BANA asks the Court to dismiss the Sellars' counterclaims, Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Here, BANA has argued and the Court has considered extrinsic evidence with regard to Defendants' counterclaims, and Defendants have declined to respond to Plaintiff's dispositive motion. (Dkt. No. 39 at 7–9.) The Sellars have been afforded ample opportunity to employ discovery in order to counter facts set forth in Plaintiff's exhibits and to establish a factual basis for action against BANA, but have declined to do so. Thus, the Court construes Plaintiff's request for relief with regard to Defendants' counterclaims as a summary judgment motion. A grant of summary judgment resolves the issue on the merits and thus is with prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014); *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 n.16 (5th Cir. 2011).

verdict for the non-moving party. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248–49 (1986). At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the non-movant's favor. *Id.* at 255.

This motion for summary judgment is unopposed. However, summary judgment is not proper merely because the opposing party has failed to file a response. Local Rules W.D. Wash. CR 7(b)(2); *Cristobal v. Siegel,* 26 F.3d 1488, 1495 n.4 (9th Cir. 1994) (unopposed motion may be granted only after the court determines there are no material issues of fact and judgment is appropriate as a matter of law). The burden on the nonmovant to respond arises only when the moving party has met its initial burden of production under Rule 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court may, however, grant an unopposed motion for summary judgment if the movant's evidence is itself sufficient to support the motion and does not on its face reveal a genuine issue of material fact. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). Moreover, if no factual showing is made in opposition to a motion for summary judgment, the district court has no obligation under Rule 56 "to scour the record in search of a genuine issue of triable fact." *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (citing *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996)).

### B. Plaintiff's Request for Declaratory Judgment

Plaintiff seeks a declaratory judgment that the Deed of Release is void and that the DOT remains a valid lien against the Property. (Dkt. No. 39 at 6–7.) Under the Washington Deed of Trust Act, a deed's trustee "may resign at its own election or be replaced by the [deed's] beneficiary."[4] Wash. Rev. Code § 61.24.010(2). Only a lawful beneficiary has the power to appoint a successor trustee. *Walker v. Quality Loan Serv. Corp.*, 308 P.3d 716, 720 (Wash. Ct.

---

[4] Because this matter is before the Court pursuant to its diversity jurisdiction, Washington law governs. *See*, *e.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

App. 2013); *Bavand v. OneWest Bank, F.S.B.*, 309 P.3d 636, 643 (2013) ("Because [Defendant] was not the beneficiary of the deed of trust at the time it attempted to appoint a successor trustee, it had no authority under RCW 61.24.010(2) to appoint [a third party] as successor trustee."). Further, only a validly appointed trustee may reconvey a deed of trust, and only at the written request of the beneficiary. Wash. Rev. Code § 61.24.110(1).

Here, the Deed of Release under Snohomish County Auditor's No. 20109130550 was unauthorized. The only evidence before the Court shows that BANA, as successor to CWB, is and has been the beneficiary of the DOT, and the Chicago Title Insurance Company is and has been the deed's trustee. (Dkt. 40, Ex. A.) There is no evidence before the Court that Mr. McClung was the beneficiary or agent of the beneficiary, or that he otherwise had any authority to appoint Ms. Outreach as successor trustee, reconvey the DOT, or execute a release on BANA's behalf. Moreover, Defendants themselves "deny that James McClung was authorized to act on their behalf," and also deny that Mr. McClung's actions gave them a fee simple absolute interest in the property.[5] (Dkt. Nos. 10 at 2; 40, Ex. H at 27.) In light of these undisputed facts, the Court concludes as a matter of law that the Deed of Release is void and that the DOT remains a valid lien against the Property.

### C. Defendants' Counterclaims

The Sellars allege that BANA failed to honor the parties' loan modification agreements dated November 23, 2009 and January 28, 2010. (Dkt. No. 10 at 4–6.) Based on this allegation, Defendants bring counterclaims for breach of contract and a violation of the CPA. (*Id.* at 6–8.)

#### 1. Defendants' Counterclaim for Violation of the CPA

Defendants allege that BANA's failure to honor the loan modification agreements was unfair and deceptive, violating the CPA. *See* Wash. Rev. Code § 19.86 *et seq*. A valid claim under the CPA requires, *inter alia*, that a plaintiff demonstrate "injury to plaintiff in his or her

---

[5] Defendant Joseph Sellars does not object to Plaintiff's motion to declare the Deed of Release void. (Dkt. No. 42 at 1.)

business or property." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1185 (Wash. 2013) (listing five elements for a CPA action); *see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 539 (Wash. 1986) (requiring a plaintiff to establish a specific showing of injury); *Seattle Rendering Works, Inc. v. Darling-Delaware Co.,* 701 P.2d 502, 506 (Wash. 1985) (noting that unless plaintiffs are injured, they cannot prevail under the CPA).

Here, Defendants—who have not opposed BANA's motion—do not identify any harm, injury, or damage they have suffered. Defendants stated in discovery that they were injured by "[t]he costs associated with preventing wrongful foreclosure of [the] property," and that "foreclosure or the prospect of foreclosure is almost *per se* emotional harm." (Dkt. No. 40, Ex. G at 6.) However, Mr. Sellars admitted in his deposition that the Property has never been the subject of foreclosure proceedings, nor has he ever received a notice of foreclosure. (Dkt. No. 40, Ex. H at 21–22.) Given the absence of any response or evidence to support their claims of financial injury, the Court does not find these conclusory assertions raised in interrogatory responses sufficient to create a genuine issue of material fact.

Defendants also stated in discovery that they have had their financial reputation injured by Plaintiff's "reporting of their collection efforts to credit reporting agencies," and that "Defendant has attempted to obtain loans for personal or business purposed [sic] since Plaintiff's declared default, and been denied because of the adverse report on his credit report." (Dkt. 40, Ex. G at 6.)  However, Mr. Sellars admitted in his deposition that he does not regularly check his credit score, that he "ha[s]n't looked it at, but that BANA 'might be reporting'" to credit agencies. (Dkt. No. 40, Ex. H at 20–21.) Mr. Sellars also acknowledged that he has successfully obtained hard money loans for his real estate flipping business since 2010, has had no trouble getting a credit card since 2010, nor has he ever had a card cancelled. (*Id.* at 19–20.) Like their other conclusory and vague assertions of injury, which the Sellars have failed to support with evidence, these statements and concessions persuade the Court that no genuine issues of material fact exist.

ORDER
PAGE - 7

In sum, Defendants have presented no evidence that that they have suffered any injury as a result of BANA's conduct. Having failed to establish the essential element of damages for their CPA claim, Defendants have not come forward with specific facts showing that there is a genuine issue for trial. Accordingly, the Court GRANTS BANA's motion for summary judgment with respect to Defendants' counterclaim for violation of the CPA.

### 2. Defendants' Counterclaims for Breach of Contract

Finally, Defendants allege that BANA's refusal to honor the terms of the loan modification agreements dated November 23, 2009 and January 28, 2010 constitutes a breach of contract, and Defendants seek both money damages and an order compelling specific performance of both agreements. (Dkt. No. 10 at 6–7.) In response, BANA argues that the Sellars' breach of contract claims should be dismissed, like the CPA claim, because the Sellars cannot prove that they suffered any damages. (Dkt. No. 39 at 7–8.)

Plaintiff is correct to the extent that "[i]n suits for money damages for breach of contract[,] a court may dismiss a breach of contract action if damages have not been suffered." *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 317 P.3d 543, 553 (Wash. Ct. App. 2014) (citing *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 162 P.3d 1153, 1160 (Wash. Ct. App. 2007)); *accord Sypolt v. Talon Grp.*, 2009 WL 497133, *4 (W.D. Wash. 2009). However, "[a] plaintiff need not prove financial loss to prevail in a suit to obtain specific enforcement of a contract." *Merrell v. Renier*, 2006 WL 3337368, *6 (W.D. Wash. 2006) ("Mr. Merrell seeks an injunction to enforce the Settlement Agreement, and thus need not prove pecuniary damages."); *see also Jacob's Meadow Owners Ass'n*, 162 P.3d at 1160 ("[A]s a general rule, every breach of contract gives rise to a cause of action, even when the aggrieved party has not suffered any actual damage.").

Nevertheless, in Washington, a breaching party cannot enforce specific performance of a contract. *Kreger v. Hall*, 425 P.2d 638, 643 (Wash. 1967) (citing *Ferris v. Blumhardt*, 293 P.2d 935, 939 (Wash. 1956)) ("[S]pecific performance will not lie where the party seeking it is in

default."); *accord Parsons Supply, Inc. v. Smith*, 591 P.2d 821, 823 (Wash. Ct. App. 1979) ("[A] breaching party cannot demand performance from the nonbreaching party."). Generally, failure to comply with the terms of a loan agreement is a breach of contract. *See Wash. Fed. Sav. & Loan Ass'n v. Alsager*, 266 P.3d 905, 907 (Wash. Ct. App. 2011) ("We hold that the promissory note and deed of trust that [the mortgagors] signed evidence the terms and conditions of their loan. Their failure to pay in accordance with these terms constitutes a breach that supports foreclosure.").

Here, "[i]n exchange for an altered loan rate [Defendant] agreed to pay a monthly payment of $1,942.92 beginning on January 1, 2010," and later agreed to monthly payments of $1,943.49 starting March 1, 2010. (Dkt. No. 10 at 4–5.) Mr. Sellars admits that after paying $1,942.92 on December 11, 2009, and $1,943.49 on February 19, 2010, he never made another payment toward the loan. (Dkt. No. 40, Ex. H at 16.) Although Mr. Sellars claims BANA did not acknowledge the loan modification agreements and that his payments were not being applied, he has failed to respond or provide the Court any evidence to support these claims. (*Id.* at 15–16.) Given that the two loan modification agreements have presently been in default for fifty-two (52) months, Defendants have failed to explain why, as a defaulting party, they are entitled to specific performance of the agreements. *Kreger*, 425 P.2d at 643.

Because Defendants have failed to demonstrate pecuniary damages, *see supra* subsection II.C.1, the Court GRANTS BANA's motion for summary judgment on Defendants' breach of contract counterclaims to the extent they seek to recover money damages. Further, although Defendants "need not prove pecuniary damages" to the extent they seek specific performance, *see Merrell*, 2006 WL 3337368 at *6, in light of the foregoing deficiencies in Defendants' counterclaims[6] the Court GRANTS BANA's motion for summary judgment on Defendants'

---

[6] The Court is entitled to grant summary judgment pursuant to Rule 56 based on an undisputed issue of fact and law not explicitly argued in the moving papers, but evident from the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (holding that summary judgment can properly be entered "so long as the losing party was on notice that she had to come forward with all of her evidence"); *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d

breach of contract counterclaims to the extent Defendants seek specific performance of the loan modification agreements.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. No. 39) is GRANTED. The document titled "Deed of Release and Full Reconveyance" recorded under Snohomish County Auditor's No. 201009130550 on September 13, 2010 is VOID, and the Deed of Trust recorded under Snohomish County Auditor's No. 200610170345 on October 17, 2006 remains a valid lien against the real property commonly known as 10929 36th Street NE, Lake Stevens, WA 98258-8150. The Court GRANTS BANA's motion for summary judgment with respect to Defendants' counterclaims for violations of the CPA and breach of contract. Accordingly, the parties' joint motion for a continuance (Dkt. No. 43) is DENIED as moot.

DATED this 18th day of July 2014.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

511, 520 (9th Cir. 1993) (affirming summary judgment entered in favor of plaintiff on grounds not expressly raised by the parties, but evident from the record). Here, BANA's motion for summary judgment requested that the Court enter judgment in its favor on all of Defendants' asserted causes of action—including breach of contract—arguing that "the Sellars have made no payments on the Loan but have nevertheless enjoyed possession of the Property." (Dkt. No. 39 at 8.) The motion clearly advised Defendants as to the reasons why BANA sought total relief on all claims and issues raised in Defendants' breach of contract counterclaims. Defendants then simply declined to respond to Plaintiff's dispositive motion. The Court finds, therefore, that Defendants had "reasonable notice that the sufficiency of [their] claim [was] in issue." *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993).